WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rick Derr, | No. CV-12-00415-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, Rick Derr, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff presents three issues on appeal: whether the Administrative Law Judge's (ALJ's) findings pertaining to substance use and evaluation of the opinion of treating psychiatrist Dr. Mittleman, and credibility are supported by substantial evidence. (Doc. 33.) Before the court is an opening brief filed by Plaintiff (Doc. 33), the Commissioner's opposition (Doc. 34), and Plaintiff's reply (Doc. 35).

The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties. (Doc. 18, 19.)

The Defendant's decision denying benefits is reversed and remanded for further proceedings consistent with this order.

1    I.    **Procedural History**

2        Plaintiff filed an application for Disability Insurance Benefits (DIB) and

3    Supplemental Security Income (SSI) in September 2008, alleging an onset of disability

4    beginning October 1, 2006, due to depression, anxiety, and attention deficit hyperactivity

5    disorder (ADHD). Transcript/Administrative Record (Tr.) 164-71, 192, 196. The

6    applications were denied initially and on reconsideration. Tr. 106-13, 116-22. On June

7    14, 2010 Plaintiff appeared with counsel and testified before an ALJ at an administrative

8    hearing. Tr. 47-105. On November 10, 2010 the ALJ issued a decision finding Plaintiff

9    not disabled within the meaning of the Social Security Act. Tr. 19-33. This decision

10   became the Commissioner's final decision when the Appeals Council denied review. Tr.

11   6-9. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. §

12   405(g). (Doc. 1)

13   II.    **The Record on Appeal**

14       a.   Plaintiff's Background and Statements in the Record

15       Plaintiff was 44 years of age on the October 1, 2006 alleged disability onset date,

16   47 years of age on his date late insured, March 31, 2009, and 48 years of age on the date

17   of the ALJ's decision. Tr. 164. Plaintiff has an eleventh grade education[1]. Tr. 201.

18   Plaintiff worked in the recent past as an auto body technician, construction worker,

19   plumber's helper, and security guard. Tr. 196-96, 211-18.

20       Plaintiff testified at a hearing before the ALJ on June 14, 2010 that he was

21   currently working as a security guard at a marina on a part-time basis. Tr. 50-51. Plaintiff

22   lives on the property in a trailer and the work involves checking the gates once in the

23   evening to make sure they were locked and checking the security monitors located in his

24   trailer while he is watching television in the evening. Tr. 52, 71-72.

25

26   _____

27       [1] Plaintiff testified that he was certified as an emergency medical technician
28   (EMT) after taking the course twice, but records from Pima Community College indicate
     he did not complete the course. Tr. 90, 265.

1   Plaintiff testified that in October 2006, depression and anxiety were the worst
2   problems he was experiencing. Tr. 53. Plaintiff testified that he takes medication for his
3   anxiety and depression, and it works some of the time. Tr. 59. Plaintiff estimates that
4   three to four days out of a week his medication doesn't work. Tr. 60. Having depression
5   affects his ability to work because he doesn't care about anything, and he has problems
6   with energy, with sleeping, and with getting up in the morning. Tr. 75. Plaintiff was also
7   diagnosed with ADHD and has a hard time focusing. Tr. 53-54, 88-89. Plaintiff was
8   prescribed dexamphetamine to treat the ADHD, to give him "focus and energy." Tr. 89.
9   Plaintiff testified that the medications he takes for his mental health issues cause side
10  effects consisting of dry mouth, ear ringing, and insomnia. Tr. 64-65.

11  Plaintiff has gout which causes pain and swelling in his foot; his gout attacks
12  usually subside in five days with the use of medication. Tr. 57, 86. Plaintiff is borderline
13  diabetic but controls this condition with diet. Tr. 58. Plaintiff has tinnitus and hearing
14  loss, and is not treating these conditions because it would involve buying expensive
15  hearing aids. Tr. 59. In December 2009, Plaintiff was referred to a cardiologist for a
16  stress test, and was advised that he needed to quit taking dexamphetamine. Tr. 61.
17  Plaintiff testified that he complied with the recommendation. Tr. 61.

18  Plaintiff stated that he "drank when he was younger" but denied having a drinking
19  problem and denied currently drinking alcohol. Tr. 61-62. Plaintiff recalled last having a
20  beer with his niece on her birthday on January 16, 2010. Tr. 62.

21  Plaintiff admitted that he abused methamphetamine, but denied abusing cocaine.
22  Tr. 62. Plaintiff maintained that he did not use cocaine despite evidence in the record of a
23  treatment note, dated December 2009, that stated that Plaintiff "used to use cocaine and
24  meth, but has not for over a year." Tr. 62.

25  In a typical day, Plaintiff gets up, tries to move around, goes outside, spends time
26  with his sister at her house if he's "in the mood to do something" and watches television.
27  Tr. 81-82. Plaintiff fixes his own meals and shops about once a week. Tr. 84-85. He
28  doesn't have any hobbies any more. Tr. 84.

A vocational expert (VE) testified that Plaintiff's past relevant work as an auto body technician was a medium, skilled position with a specific vocational preparation (SVP) score of 7; his work as a lube technician was a medium, semiskilled position with an SVP of 4, his work as a plumber helper and construction worker was a heavy, semiskilled position with an SVP of 4, and his current work as a surveillance system monitor was a sedentary, unskilled position. Tr. 95.  The VE testified that a hypothetical individual would not be able to perform Plaintiff's past relevant work when the ALJ posed the following hypothetical limitations:

> No exertional limitations. Occasionally use ramps and stairs, could not use ropes ladders or scaffolds, must avoid concentrated exposure to excessive noise and even moderate exposure to hazards. The hypothetical individual can deal with changes in a routine work setting, can attend and concentrate for two hours, then needs to take a fifteen minute break, can then attend and concentrate for two more hours, then needs to take a half hour or hour lunch break, then can attend for two more hours, then another fifteen minute break, then can attend for two more hours until the individual completes an eight-hour day.

Tr. 96, 101-102.

The VE testified that the same hypothetical individual with the very same functional restrictions, with the same age, vocational and educational background as Plaintiff could perform other jobs in the national or regional economy, specifically housekeeping cleaner, grocery bagger, and merchandise deliverer. Tr. 98-99.

The VE explained that if any individual cannot attend for up to two hours at a time, it would eliminate employment. Tr. 102.  The VE agreed that if any individual is unable to complete a normal work day or work week without interruptions from psychologically-based symptoms, they could not work. Tr. 103.

### b.  Relevant Medical Evidence Before the ALJ

#### i.  Treating Sources

1    Plaintiff received counseling and medication management at Marana Health Clinic

2    between August 2007 and May 2010.[2] Tr. 304-70, 426-63, 464-72. Plaintiff, with

3    assistance, completed a Behavioral Health Assessment and Service Plan Checklist in

4    August 2007. Tr. 353-370. Plaintiff indicated on the form that he was diagnosed with

5    ADHD by his primary care physician and was seeking psychiatric assessment and

6    medical management and that he "self[-]medicates [with] meth" whenever he "can get it"

7    Tr. 358-59, 361; *see also* Tr. 350 (noting ongoing substance abuse in August, 2007).

8    Plaintiff stated that he doesn't drink alcohol now, but that he had problems in the past. Tr.

9    359.  Plaintiff was assessed with ADHA[3] Inattentive type and methamphetamine use. Tr.

10   365. Plaintiff was assessed with a GAF[4] score of 50. *Id*. Dr. Mittleman evaluated Plaintiff

11   in October 2007 and diagnosed Plaintiff with "major depress[ive disorder], recurrent,

12   severe[,] ADD[,] PTSD[,] Dyslexia[,] and SA [substance abuse] – methamphetamine."

13   Tr. 332.

---

14

15   [2] Despite Plaintiff's allegation of an onset date of October 2006, there is no
16   medical evidence in the record reflecting any medical treatment between the October
     2006 alleged onset of disability and his first presentation to the Marana Health Clinic for
17   an initial appointment on August 30, 2007. *See* Tr. 350-370.

18   [3] Though the assessment indicated Plaintiff was assessed with ADHA, this was
     probably a typographical error, and most likely should have been ADHD (Attention-
19   Deficit Hyperactivity Disorder) as the diagnostic code, DSM-IV code 314.00, written on
     the assessment form indicates. *See Amer. Psychiatric Ass'n, Diagnostic and Statistical*
20   *Manual of Mental Disorders* (4th ed. Text Rev. 2000) (*DSM-IV-TR*).

21   [4] GAF Scores range from 1-100. *DSM-IV* at 32. "A GAF score is a rough estimate
     of an individual's psychological, social, and occupational functioning used to reflect the
22   individual's need for treatment." *Vargas v. Lambert*, 159 F .3d 1161, 1164 n. 2 (9th Cir.
     1998). In arriving at a GAF Score, the clinician considers psychological, social, and
23   occupational functioning on a hypothetical continuum of mental health illness. *DSM-IV-*
     *TR,* at 34.

24   A GAF score of 41-50 indicates:

25    Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent
26   shoplifting) OR any serious impairment in social occupational, or school functioning
     (*e.g.*, few friends, conflicts with peers or co-workers).

27   *Id.*

28

1        In August 2008, Plaintiff was reassessed, and reported that his symptoms are

2   "somewhat improved" and also reported "no meth use in [the] past year." Tr. 351. From

3   December 2008 through April 2009 Dr. Mittleman's treatment notes reflect that Plaintiff

4   denied any further substance abuse. Tr. 305, 307, 311, 313.

5        Plaintiff received counseling and medication management at Marana Health Clinic

6   between mid-2007 and May 2010. Diagnoses included bipolar disorder, ADHD, major

7   depressive disorder, amphetamine abuse, developmental dyslexia. Tr. 304-18, 320, 322-

8   25, 333-46, 428, 431-39, 446, 454, 458, 462, 465-72. While Plaintiff's reported

9   symptoms waxed and waned, care providers — including Dr. Mittleman — noted that at

10  times, Plaintiff's condition responded to treatment. Tr. 311, 323, 335-37, 340-41, 433,

11  468, 472. Nonetheless, GAF ratings ranged very little – between 47 and 50, indicating

12  serious symptoms (Tr. 305, 307, 311, 313, 315, 317-18, 352, 428, 433, 436, 439, 465,

13  471) and there was overall change in the assessment of his function rating or symptom

14  rating or of progress towards his treatment plan goals (Tr. 305, 307, 308, 311, 313, 315,

15  319, 321, 436, 439). In January 2008, Plaintiff expressed interest in working; a mental

16  health care provider referred him to vocational rehabilitation. Tr. 340. In March 2008, Dr.

17  Mittleman observed that Plaintiff was not working yet. Tr. 322. In May 2008, Dr.

18  Mittleman noted that Plaintiff was working as a security guard at the marina. Tr. 321. In

19  July 2008, Dr. Mittleman documented Plaintiff's report that he was experiencing mood

20  swings and that he had been unable to tolerate a trial of anti-psychotic medication

21  (Seroquel) and was unable to work. Tr. 318-19. Dr. Mittleman adjusted the dose of

22  Plaintiff's anti-depressant medication, and prescribed a different medication used to treat

23  mood swings (lithium). Tr. 318-19. In October 2008, Dr. Mittleman stopped Plaintiff's

24  lithium after Plaintiff reported that it was sedating. Tr. 314-15. In December 2008, Dr.

25  Mittleman prescribed a sleep aid (Ambien). Tr. 312-13.

26       In July 2009, Dr. Mittleman completed a medical source statement in which he

27  summarized Derr's diagnoses: Bipolar Disorder Not Otherwise Specified; Recurrent,

28  Severe Major Depressive Disorder Without Psychotic Features; Generalized Anxiety

Disorder; Amphetamine Abuse; Post-Traumatic Stress Disorder; ADHD, Predominantly Inattentive Type; and Disorder of Written Expression. Tr. at 387; *See DSM-IV-TR*, at 857-64. Treatment included medication, case management, and rehabilitation for substance abuse ("SA"). Tr. at 387. Dr. Mittleman stated that Derr was "not currently using drugs for @ [*i.e.*, about] 2 years." *Id*. Dr. Mittleman recited Derr's medications including the psychotropic Abilify, the antidepressant Effexor, the stimulant Dexedrine, and the hypnotic Ambien. *Id*. Dr. Mittleman indicated "N/A" in response to a question about medication side effects that might have "implications for working." *Id*. Dr. Mittleman recited clinical findings such as mood swings, low energy, suicidal ideation, poor concentration, distractibility, hyperactivity, and anxiety. Tr. at 387-88. According to Dr. Mittleman, Derr had seriously-limited-but-not-precluded limitations in six areas, including understanding, remembering, and carrying out very short and simple instructions; was unable to meet competitive standards in eight areas, including maintaining attention for a two-hour segment; and had no useful ability to function in five areas, including completing a normal workday and workweek without interruptions from psychologically based symptoms. Tr. at 389-90. In Dr. Mittleman's view, Derr would miss more than four days of work per month and that neither alcohol abuse nor substance abuse contributed to the limitations specified. Tr. at 391.

### ii.  Examining Sources

In December 2008, Dr. Yost examined Derr for the Agency; diagnosed recurrent major depression with mild features, alcohol abuse in remission for one year, crystal methamphetamine abuse in remission for two years, and attention deficit by history; and opined that Derr did not have a functional limitation that would last for a year. Tr. 274-77.

### iii.  Non-Examining State Agency Medical Sources

In May 2009, non-examining State-agency psychologist Dr. Foster-Valdez determined that Derr did not have a "severe" mental impairment. Tr. at 107, 279. In May

2009, non-examining State-agency psychologist Dr. Kerns agreed with Dr. Foster-Valdez. Tr. at 371.

*iv.  Other sources*

Jacque Mossie completed a third party function report stating that Plaintiff's medications cause him insomnia on occasion, that his activities include watching television, talking on the phone, and visiting with his daughters. Tr. 220-23. Mossie indicated that either Plaintiff's condition or his medications affect his ability to understand, complete tasks, concentrate, and follow instructions. Tr.224. Mossie noted that Plaintiff can only pay attention for five to ten minutes, has a hard time with reading and writing, lacks concentration, and does not handle stress or changes in routine well. Tr. 224-25.

Gayle Mason, a case manager at Marana Health Center in Marana, Arizona, completed a third party function report on February 24, 2009. Tr. 238-242. Mason indicated that Plaintiff has "trouble getting out of bed  [and] has lots to do but can't figure out what to do so does nothing[.] [P]oor concentration, poor motivation." Tr. 238. Mason also noted that Plaintiff's condition affects his ability to kneel and hear, as well as his memory, completing tasks, concentration, understanding and following instructions. Tr. 240. Mason states that Plaintiff cannot read or write. Tr. 240.

c.  The ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date. Tr. 24 ¶ 2. The ALJ found that Plaintiff has the severe impairments of depressive disorder vs. bipolar disorder; history of substance abuse in remission; history of attention deficit hyperactivity disorder (ADHD). Tr. 24, ¶ 3. The ALJ found that Plaintiff's impairments, including his mental impairment, do not meet or equal a listed impairment. Tr. 27, ¶ 4. The ALJ further found that in considering Plaintiff's mental impairment, the "paragraph B" criteria were not satisfied because Plaintiff had only mild restrictions in his activities of daily living; mild difficulties in social functioning, mild to moderate difficulties with regard to concentration, persistence

or pace; and no episodes of decompensation which have been of extended duration. Tr. 27-28. The ALJ stated that the RFC determination reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. Tr. 28. The ALJ found that Plaintiff had the RFC to perform work at all exertional levels with some non-exertional limitations and the following abilities: can deal with changes in routine work setting; and, can attend and concentrate for two hours then must take a break, [and] … then can attend and concentrate for 2 more hours and then take a break, and so forth, until the end of the workday." Tr. 28, ¶ 5.  The ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 31, ¶ 6. The ALJ further found that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and concluded that Plaintiff was not under a disability from October 1, 2006 through the date of the ALJ's decision. Tr. 31-32, ¶¶ 10-11.

### III.   Discussion

#### a.   Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence*." Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). " 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Commissioner, Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins,* 466 F.3d at 882). The Court reviews only the reasons provided by the ALJ in the disability determination and

1    may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, ---
2    F.3d ---, 2014 WL 3397218, *11 (9th Cir. July 14, 2014) (citing *Connett v. Barnhart*, 340
3    F.3d 871, 874 (9th Cir. 2003)).

4          Whether a claimant is disabled is determined using a five-step evaluation process.
5    To establish disability, the claimant must show (1) he has not worked since the alleged
6    disability onset date, (2) he has a severe impairment, and (3) his impairment meets or
7    equals a listed impairment or (4) his residual functional capacity (RFC) precludes him
8    from performing his past work. At step five, the Commissioner must show that the
9    claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a).

10                          b.  Analysis

11                       *i.  Treating Source*

12         Plaintiff argues that the ALJ erred in rejecting some of the opinions of Dr.
13   Mittleman. (Doc. 33, at 12.) The Commissioner responds that the ALJ reasonably
14   discounted Dr. Mittleman's opinion. (Doc. 25, at 13.) The Court finds that the ALJ erred
15   in discounting Dr. Mittleman's opinion.

16         There are three types of medical opinions (treating, examining, and nonexamining)
17   and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*,
18   574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).
19   The ALJ acknowledged Dr. Mittleman as Plaintiff's treating physician. Tr. 30. Generally,
20   more weight is given to the opinion of a treating source than the opinion of a doctor who
21   did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217,
22   1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  Medical
23   opinions and conclusions of treating physicians are accorded special weight because
24   these physicians are in a unique position to know claimants as individuals, and because
25   the continuity of their dealings with claimants enhances their ability to assess the
26   claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988);
27   *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,
28   1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'").

If a treating doctor's opinion is not contradicted by another doctor (*i.e.*, there are no other opinions from examining or nonexamining sources), it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Ryan*, 528 F.3d at 1198; *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine,* 574 F.3d at 692; *Ryan*, 528 F.3d at 1198; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Specific and legitimate reasons are also required to reject a treating doctor's ultimate conclusions. *Cf. Lester*, 81 F.3d at 830 (citing *Embrey,* 849 F.2d at 422, and *Murray,* 722 F.2d at 502); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (stating that "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion"). " 'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d at 632 (citing SSR 96-2p at 4, available at 61 Fed.Reg. 34,490, 34,491; 20 C.F.R. §§ 404.1527, 416.927). Treating source medical opinions are still entitled to deference and, "[i]n many cases, . . . will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray*, 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

The ALJ rejected Dr. Mittleman's opinion in part, noting that Dr. Mittleman "has not always been told the truth by claimant about his substance usage and other activities." Tr. 30. The ALJ continued:

> Perhaps Dr. Mittle[man] does not know that claimant is able to live on his own and work part-time to cover his rent and other expenses. Dr. Mittleman does not address such an issue in his medical source statement. Claimant's home situation certainly represents a good degree of organization and responsibility on claimant's part. It was also noted that claimant's comments to his primary care nurse practitioner were much more consistently upbeat regarding his function than those mentioned to behavioral health providers. As noted above Exhibit 11F is filled with comments to his nurse practitioner about the effectiveness of his psychotropic medications in addition to physical concerns. One possible explanation for his lack of forthrightness to Dr. Mittle[man] may be found in claimant's first evaluation at CODAC where when asked whether there were any supports or resources he needed to get a job or keep his current job, he responded that he needed to find a medication to take the place of meth (Exhibit 6F/68). He need to keep Dr. Mittle[man] convinced that he needs Adderal or the like to replace meth. Finally, Dr. Mittle[man] sees claimant for medication monitoring, but the counseling takes place with others on staff. The general impression of claimant's well-being with his medication regimen and slight alterations in medications recommended when he has short-term periods of worse symptoms do not really support the extreme assessment given by Dr. Mittle[man]."

Tr. 30-31.

The ALJ erred by rejecting Dr. Mittleman's opinions because the ALJ concluded Dr. Mittleman has not always been told the truth by claimant about his substance usage and other activities because the medical record supported the finding that Plaintiff continued to abuse both alcohol and drugs despite reporting to his treating providers that he no longer had a substance abuse problem. *See* Tr. 30 (referring to the ALJ's credibility analysis). The ALJ relied on Plaintiff's admission that he had one beer at a niece's birthday celebration in January 2010 to find both Plaintiff's statement in December 2008

that he had been drug and alcohol free for over a year questionable, as well as a statement in April 2010 that he denied current alcohol abuse to be "probably" not true, because the fact that he "last used alcohol in January 2010 shows that he probably abused alcohol as recently as that same date and thus the earlier conclusions in the July 2009 MSS [medical source statement] are open to question because they are based on assumptions that are no longer true, and perhaps were never true." Tr. 29. As Plaintiff correctly argues, Plaintiff's admission of drinking one beer in January 2010 is not substantial evidence of alcohol abuse, and in no way invalidates his earlier statement in 2008 that he had been drug and alcohol free for over a year.

The ALJ unreasonably found that Plaintiff was not forthright with Dr. Mittleman in an effort to "mislead" or "dupe" Dr. Mittleman into prescribing a stimulant replacement for methamphetamine. Tr. 31. Plaintiff could not have been more forthcoming with his treating providers about his substance abuse. *See* Tr. 353-370. (Plaintiff noting ongoing, daily substance abuse and indicating that he self-medicates his condition of ADHD with methamphetamines whenever he can); *see also* Tr. 350 (noting ongoing substance abuse in August, 2007). At his first examination, Dr. Mittleman addressed Plaintiff's substance abuse ("SA") of methamphetamine and prescribed dexedrine for attention deficit disorder. Tr. 332. The ALJ himself found that Plaintiff had ADHD as a "severe" impairment (Tr. 24) and did not dispute that stimulants are one of the main treatments for such an impairment. The ALJ could not rationally find that Plaintiff essentially deceived Dr. Mittleman into prescribing a stimulant to further a stimulant use disorder when the ALJ himself accepted a medical impairment for which a stimulant is an established treatment.

The ALJ erred by speculating that Dr. Mittleman did not know that Plaintiff worked part-time. Tr. at 30.  The record indicates that Dr. Mittleman was aware of Plaintiff's work as a security guard in a marina. Tr. 321, 325, 329. Dr. Mittleman also knew that Plaintiff lived in an "RV" at the Catalina Marina. Tr. 330.

The ALJ erroneously relied on a few select notations that Plaintiff was "feeling better" or "pretty good", was "doing well" or was "stable" "on current meds", or was getting eight to nine hours of interrupted sleep a night as evidence that his functioning was inconsistent with allegations of disability. *See* Tr 29-30 (citing Tr. At 402, 405, 428, 465, 467, 469) As the Ninth Circuit recently explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 2014 WL 3397218, *18 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Id.* (citing *Ryan*, 528 F.3d at 1200–01)). *Cf. Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work."); *see also Holohan,* 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Looking at the treatment notes in their entirety does not provide substantial evidence to support the ALJ's findings. For instance, the treatment note cited by the ALJ that suggests that Plaintiff's claim of insomnia is inconsistent with Plaintiff's report where he admits he is "sleeping well" does state that Plaintiff gets eight to nine hours of sleep a night, but that the sleep is interrupted. *See* Tr. 428. Additionally, that same treatment note assigns Plaintiff a GAF score of 49. Defendant concedes that overall, the Plaintiff's GAF score stayed between 47 and 50. (Doc. 34, at 4.)

Although the ALJ noted that Plaintiff reported — for the purpose of medical treatment, not mental health treatment — that he was "feeling better" and "doing well" on his current medication, the ALJ failed to note that his care provider at these visits made the objective observations that Plaintiff was "easily distracted and hyperactive" (Tr. 403) and had a "depressed affect" and was "anxious" (Tr. 407), and that his anxiety and depression were "[u]nchanged" from previous assessments of moderate to high severity (Tr. 408).

### ii.  Substance Abuse and Alcoholism

Plaintiff argues that the ALJ erred by not making two separate sets of formal findings regarding substance abuse, one set taking into account substance use and the other set not taking into account substance use. (Doc. 33, at 8)(citing Tr. at 24-33). The Commissioner responds that the Plaintiff is conflating two different ways in which substance abuse can be considered in evaluating Social Security disability claims, and that the ALJ is not precluded from considering evidence of substance abuse during the five-step sequential evaluation. (Doc. 34, at 11.)

A person is not considered disabled "if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d) (2)(C). In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is whether an individual would still be found disabled if he or she stopped using alcohol or drugs. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

The Commissioner submits that the Ninth Circuit has recognized that an ALJ may consider evidence of substance abuse in evaluating the credibility of a claimant's subjective complaints and in evaluating physician opinions. (Doc. 34, at 11)(citing 20 C.F.R. § 404.1529(c)(4); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)). The Court agrees with the Commissioner's assertion to the extent

the ALJ may rely on conflicting statements by a claimant, including statements regarding a claimant's alcohol or substance abuse, to reject a claimant's testimony. *See Thomas*, 278 F.3d at 959 (ALJ's finding, based on substantial evidence in the record, that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco*, 188 F.3d at 1090 (ALJ properly discounts claimant's testimony when claimant's testimony or behavior, including, among other things, statements regarding drinking, are not consistent). Additionally, having failed to make a finding of disability, it was not necessary for the ALJ to proceed through the remainder of the evaluation to consider if there was medical evidence of alcoholism or drug addiction.[5] *See* 42 U.S.C. § 423(d)(2)(C) (requiring an inquiry into whether Plaintiff's alcoholism or drug abuse contributed to disability finding); 20 C.F.R. § 404.1535(b) (same); 416.935(b) (same); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)(finding that it follows from the statutory and regulatory language that an ALJ should not proceed with the alcohol or substance abuse analysis if he or she has not yet found the claimant to be disabled under the five-step inquiry).

The ALJ considered Dr. Mittleman's opinion that alcohol or substance abuse do not contribute to the Plaintiff's condition, and that he has not used drugs for two years, *i.e.*, since July 2007. Tr. 29 (citing 387-391). The ALJ found as a matter of fact, that Plaintiff probably abused alcohol in January 2010, and he was no longer alcohol free. Tr. 29. The ALJ found that a treatment note dated January 2010 "at the very least suggests, and arguably implies, that the claimant is not drug free." Tr. 29. Based on these findings, the ALJ concluded that Plaintiff was not forthright about his drug usage because he needed to keep Dr. Mittleman "convinced that he needs Adderal or the like to replace meth." Tr. 31. Thus, Plaintiff asserts, the ALJ improperly rejected Dr. Mittleman's opinions, in part, on the grounds that Dr. Mittleman was not always told the truth by Plaintiff about his substance use, and that Dr. Mittleman's opinion was based on an

---

[5] As noted below the Court finds that the ALJ's determination of non-disablity is not supported by substantial evidence in the record.

assumption (Plaintiff had not used drugs for about two years) that was no longer true. As discussed above, this Court has ruled that the ALJ's speculations about Dr. Mittleman's opinions are not supported by substantial evidence. *See* Section II.b.i, *supra*. Because these factual findings are in error, and because the Court credits Dr. Mittleman's opinion — that alcohol or substance abuse do not contribute to the Plaintiff's condition, and that he has not used drugs for about two years — as true, it is unnecessary for this Court to determine if the ALJ erred in applying the law to his findings of fact .

### iii.   Plaintiff's Credibility

Plaintiff argues that the ALJ erred in Plaintiff's credibility determination. Plaintiff testified that he has depression and anxiety, and his medication only works "some of the time." Tr. 53, 59. Plaintiff's depression affects his ability to work because he doesn't care about anything, and has problems with energy, sleeping and getting up in the morning. Tr. 75. Additionally, he has been diagnosed with ADHD and has a hard time focusing. The ALJ found that "the claimant's testimony with regard to the severity and functional consequences of his symptoms is not very credible." Tr. 30.

"[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks and citation omitted); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750; *see also Lingenfelter*, 504 F.3d at 1035-36. The ALJ's credibility findings must be supported by specific, cogent reasons. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

Where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering by the ALJ, the ALJ's reasons for rejecting the claimant's symptom testimony must be specific, clear and convincing. *Tommasetti*, 533 F.3d at 1039; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883. When assessing a

claimant's credibility, however, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn*, 495 F.3d at 635 (internal quotation marks and citation omitted). Additionally, the ALJ may disregard self-serving statements if they are unsupported by objective evidence. *Rashad*, 903 F.2d at 1231.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Orn*, 495 F.3d at 635 (the ALJ must provide specific and cogent reasons for the disbelief and cite the reasons why the testimony is unpersuasive).

As noted above, the Court finds that the ALJ erred in determining that Plaintiff was untruthful about his alcohol and substance abuse. In addition to the reasons this Court has determined are not reasonable, the ALJ also noted that one treatment note dated January 2010 diagnosed Plaintiff with amphetamine abuse, not amphetamine abuse in remission or by history. The ALJ rejected Plaintiff's argument that such abuse was "by history only" because the document "says what it says." Tr. 29. The document, however, also says that there are no "SA" (substance abuse) issues and nothing else in the treatment note supports the diagnosis of current amphetamine abuse. *See* Tr. 465.

The ALJ found Plaintiff not credible in reporting the side effects of his medication to his treating psychiatrist, Dr. Mittleman, including dry mouth, ringing of the ears, and insomnia because Dr. Mittleman responded "N/A" (not applicable) with regard to medication side effects in his medical source statement. The ALJ speculated that if Plaintiff was incorrect about reporting side effects to Dr. Mittleman, "then what else has he been incorrect about, not only to me but to his health care providers." First, Dr. Mittleman wrote not applicable, in response to a questionnaire that asked him to describe any side effects of medications that *may have implications for working*. Tr. 387

(emphasis added). It is illogical to conclude from this statement that contrary to Plaintiff's testimony, he reported no side effects at all.[6] Second, the record indicates that Dr. Mittleman prescribed both the stimulant (dexedrine) and a sleep aid (hypnotic) Ambien. *E.g.*, Tr. at 304, 306-07, 310, 312-13, 430. Plaintiff was prescribed Ambien precisely because he had difficulty sleeping. *E.g.*, Tr. at 304. An ALJ cannot rationally find a claimant not credible for reporting insomnia when the claimant is prescribed a hypnotic to assist sleep and the claimant does not carry a diagnosis of insomnia. *E.g.*, Tr. at 432, 435.

The ALJ stated that there are "numerous references in the medical evidence which are indicative of non-compliance with the medical regimen specified by his physician." Tr. 30. The ALJ did not cite to any specific instances in the record in support of this conclusion that Plaintiff's noncompliance does not support the alleged intensity and duration of pain and subjective complaints. *See id*. As noted by Plaintiff, when he stopped taking lithium due to side effects, Dr. Mittleman did not instruct Plaintiff to continue taking lithium, but stopped prescribing. Tr. 314. Similarly, when Plaintiff could not tolerate a dosage of Effexor and took less, Dr. Mittleman prescribed less. Tr. 319. Dr. Mittleman's treatment notes report that generally, Plaintiff is compliant with his medication. *See* Tr. 304, 306, 310, 312, 314, 316, 318.

The ALJ noted that the household tasks Plaintiff was able to perform as well as his social interactions are consistent with a greater degree of overall functioning than he claims. Tr. 30. The ALJ based this on Plaintiff's acknowledgement that he was able to cook, shop, do laundry, wash dishes, take walks, use public transportation, visit

---

[6] Additionally, although Dr. Mittleman consistently noted no side effects from medication in the medication section of his treatment notes, (*see e.g.*, Tr. at 304, 306, 310, 312, 318) there are at least two occasions where Plaintiff reported a side effect of a medication which was then discontinued, and does not show up on the medication section of the treatment note, appearing as if no side effects were reported, when in fact they were. *See e.g.*, Tr. 314-15 (regarding the sedating effects of lithium) and Tr. 318-19 (regarding the sedating effects of Seroquel.) In light of these reports of side effects in the medical record, the ALJ erred in finding Dr. Mittleman's assessment, by itself and relevant to another question, as sufficient evidence to contradict Plaintiff's claims that he reported side effects from his medication.

1  friends/relatives, talk on the phone, and requires no assistance in dressing or personal

2  grooming. *Id*. Additionally, the ALJ noted that Plaintiff works on a part-time basis and a

3  considerable amount of time is spent watching television. *Id*.

4       Plaintiff's described activities do not contradict his testimony regarding his

5  limitations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able

6  to spend a substantial part of his day engaged in pursuits involving the performance of

7  physical functions that are transferable to a work setting, a specific finding as to this fact

8  may be sufficient to discredit an allegation of disabling excess pain."). Plaintiff's ability

9  to dress himself, do some chores around the house, visit friends or relatives, talk on the

10 phone and to drive or otherwise use public transportation, is not inconsistent with his

11 claims that he has trouble "getting up in the morning" and "can't focus" and has trouble

12 "reading and writing." Tr. 196. Only when a level of activity is inconsistent with a

13 claimant's claims of limitations should those activities have any bearing on the claimant's

14 credibility. *Garrison*, 2014 3397218, *17 (quoting *Reddick,* 157 F.3d at 722).

15 Additionally, contrary to the ALJ's conclusion, Plaintiff's part-time "work" — living in a

16 trailer in a boat yard, checking locks once a day after 6:00 p.m., walking the property

17 once a day and watching security monitors "out of the corner of [his] eye" while he

18 watches television (*see* Tr. 71)  — does not actually reflect a "good degree of

19 organization and responsibility" relevant to the ability to work full-time. Tr. 30. *See Orn*,

20 495 F.3d at 639 (the two grounds for using daily activities to form the basis of an adverse

21 credibility are when activities contradict other testimony, meet the threshold for

22 transferable work skills); *see also see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.

23 2012) ("The critical differences between activities of daily living and activities in a full-

24 time job are that a person has more flexibility in scheduling the former than the latter, can

25 get help from other persons ..., and is not held to a minimum standard of performance, as

26 she would be by an employer. The failure to recognize these differences is a recurrent,

27 and deplorable, feature of opinions by administrative law judges in social security

28 disability cases."). Furthermore, the ALJ's conclusion is contrary to the statement of

Jacque Mossie owner of Catalina Marina where Plaintiff works (Tr. 474), reporting that Plaintiff has a hard time with reading and writing, does not follow spoken instruction well, seems to have a hard time concentrating on tasks and understanding instructions. Tr. 224.

The ALJ's finding that Plaintiff's statement that he reads at the fourth-grade level was not credible because the VE classified his past relevant work as an auto body repairer as skilled work in the national economy (Tr. 30, 95) is unreasonable. There is no evidence in the record that the job, as he actually performed it, required any reading above the fourth grade level. Plaintiff was a high-school dropout, and testified that he was in special education courses while he attended school.  Tr. 44-45. Plaintiff's treating psychiatrist diagnosed Plaintiff with a disorder of written expression (Tr. 387) ("315.02")). *DSM-IV-TR*, at 864 (code for 315.02). Additionally, it was noted in his initial intake form at the Marana Health Clinic that Plaintiff "needs help reading & writing." Tr. 354.

Finally, the ALJ erroneously found Derr not credible because he testified in June 2010 that he walked close to a mile (Tr. 66-67), but stated to medical providers that he did not exercise in August 2009 (Tr. 393) and December 2008 (Tr. 406). Tr. at 29. Plaintiff's testimony did not contradict the record. Plaintiff testified that he doesn't set a time to exercise every day, but tries to get out and get some air, and walk "around the lot." Tr. 67. In the past year before his hearing testimony, the furthest Plaintiff walked was "maybe a mile" which he recalled doing a month before the hearing but didn't actually know if it was a mile. Tr. 67. It is not surprising that the medical testimony cited by the ALJ reflected that Plaintiff was not exercising: in August 2009, Plaintiff was seen at urgent care for treatment of gout and pain in both of his ankles, and in December 2008 he was in pain and mild distress. *See* Tr. 393, 406. Regardless, even if the record suggests that Plaintiff never reports to his care providers that he exercises, Plaintiff's testimony, read in context, does not describe a person who believes they are "exercising" every day as a medical care provider might believe that term to mean, but who does attempt to get

out of the house and walk around his yard a bit. Plaintiff's statements about exercise do not support the ALJ's credibility finding.

## IV.    Remedy

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician this Court credits the opinion or testimony as a matter of law. *Lester*, 81 F.3d at 830; *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). The Ninth Circuit has held that a court should remand to an ALJ with instructions to calculate and award benefits where three conditions are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 2014 WL 3397218, *20 (citations and footnote omitted). Even when all conditions of the credit-as-true rule are satisfied, a court should nonetheless remand for further proceedings when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. A district court abuses its discretion, however, by remanding for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *Id*.

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Mittleman and for finding Plaintiff not very credible. After applying the credit-as-true rule to improperly discredited evidence two outstanding issues remain to be resolved before determining that Plaintiff is entitled to benefits. The impartial vocational expert testified that the mental limitations assessed by Dr. Mittleman, if adopted, would preclude past work or any work. *See* Tr. 102-03 (The vocational expert stated that a person could not perform work if he or she could not attend and concentrate for up to two hours at a time or is unable to complete a normal work day or work week without interruptions from psychologically based symptoms).

However, even crediting Dr. Mittleman's testimony as true regarding Plaintiff's alcoholism and substance abuse, it is not clear that Plaintiff would be disabled from his alleged date of onset because there is no medical evidence in the record reflecting any medical treatment between the October 2006 alleged onset of disability and his first presentation to the Marana Health Clinic for an initial appointment on August 30, 2007. *See* Tr. 350-370. Additionally, Dr. Mittleman stated in July 2009 that alcohol or substance abuse did not contribute to any of Plaintiff's limitations, and that Plaintiff had been drug free for "around" two years. *See* Tr. 387. Dr. Mittleman, however, first saw Plaintiff in October 2007, at which time Plaintiff was still taking methamphetamines. See Tr. 327, 332, 347, 387.

Accordingly, the Court will reverse the Commissioner's final decision with a remand for further proceedings consistent with this opinion. The ALJ shall, on remand, credit Dr. Mittleman's opinion as true, and credit Plaintiff's statements as true. On remand the ALJ shall make a determination regarding onset date and reviewable findings regarding substance use. *See Bustamante*, 262 F.3d at 954-56.

IT IS ORDERED:

1.    Defendant's decision denying benefits is REVERSED.

2.    The case is REMANDED for further proceedings consistent with this order.

3.    The Clerk is directed to enter judgment accordingly.

Dated this 6th day of August, 2014.

Bernardo P. Velasco
United States Magistrate Judge