WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rick Derr,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn Colvin, Acting Commissioner of Social Security Administration,<br><br>　　　　　　　Defendant. | No. CV 12-415-TUC-BPV<br><br>**ORDER** |

　　　　This action commenced when Plaintiff Rick Derr sought judicial review of Defendant's decision denying his applications for disability insurance benefits and supplemental security income. Upon consideration of the parties' briefs on the issue, this Court entered an Order reversing the Commissioner's decision and remanding the matter for: (1) an award of benefits based upon a finding of disability commencing November 1, 2007; and (2) further proceedings to determine whether Plaintiff's disability onset date occurred prior to November 1, 2007. (Amended Order (Doc. 41)).  Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), Plaintiff now seeks attorneys' fees in the amount of $10,541.16 for time that attorneys Phillip B. Verrette, Patrick R. McNamara, and Eric Schnaufer spent working on his case. (Plaintiff's Motion & Memorandum for Attorneys' Fees (Docs. 43, 44; *see also* Plaintiff's Reply (Doc. 46)). Defendant has filed a Response in opposition to Plaintiff's EAJA Petition (Doc. 45) and

Plaintiff has filed a Reply (Doc. 46). For the following reasons, the Court grants in part Plaintiff's Motion for Attorney's Fees.

I.   **PROCEDURAL HISTORY**

> The Court initially entered an order revers[ing] the Commissioner's final decision with a remand for further proceedings consistent with this opinion. The ALJ shall, on remand, credit [treating] Dr. Mittleman's opinion as true, and credit Plaintiff's statements as true. On remand the ALJ shall make a determination regarding onset date and reviewable findings regarding substance use.

(Doc. 36, p. 23) (citation omitted). Thereafter, Defendant filed a motion to alter or amend the judgment (Doc. 38), which the Court granted, in part, to the extent that it clarified its holding (Doc. 40) and issued an Amended Order (Doc. 41; *see also* Amended Judgement). In pertinent part, the Amended Order and Judgment reflected that the Commissioner's decision was reversed and the matter was remanded for: (1) an award of benefits based upon a finding of disability commencing November 1, 2007; and (2) further proceedings to determine whether, in light of Plaintiff's alleged disability onset date of October 1, 2006, his disability onset date occurred prior to November 1, 2007. (Amended Order (Doc. 41, p. 23); *see also* Doc. 42)).

II.   **DISCUSSION**

The EAJA authorizes federal courts to award reasonable attorney's fees, court costs, and other expenses when a party prevails against the United States, unless the court finds that the government's position was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A); *see also Tobler v. Colvin,* 749 F.3d 830, 832 (9th Cir. 2014); *Meier v. Colvin,* 727 F.3d 867, 870 (9th Cir. 2013). Defendant does not contest that Plaintiff is a prevailing party. *See e.g. Akopyan v. Barnhart*, 296 F.3d 852, 854-55 (9th Cir. 2002); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1257 (9th Cir. 2001). However, Defendant contends that Plaintiff is not entitled to fees under the EAJA because Defendant's position was substantially justified. Defendant, alternatively, argues that the fees requested should be reduced as unreasonable.

### A. SUBSTANTIAL JUSTIFICATION

Defendant argues that an award of attorneys' fees should be denied because her position was substantially justified. (Doc. 45, pp. 1-4). "Substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, (1988); *see also Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2005). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Meier,* 727 F.3d at 870 (9th Cir. 2013) (quoting *Pierce,* 487 U.S. at 565). Furthermore, the EAJA's reference to the government's position encompasses "both the government's litigation position and the underlying agency action giving rise to the civil action." *Meier,* 727 F.3d at 870 (citations omitted). Thus, if the government's underlying position was not substantially justified, the Court must award fees and need not address whether the government's litigation position was justified. *Tobler,* 749 F.3d at 832 (citation omitted). The government bears the burden of showing that its position was substantially justified. *Id.*

In the context of a Social Security disability determination, "district courts should focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified, not on whether the government's ultimate disability determination was substantially justified." *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010) (citing *Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995)); *see also Tobler,* 749 F.3d at 834-35 n.1). A position can be substantially justified pursuant to the EAJA even when the position is ultimately incorrect. *Pierce*, 487 U.S. at 566 n.2 ("a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."). The test for determining whether a position was substantially justified, therefore, focuses on whether "a reasonable person could think it correct[.]" *Id*. If "there is a genuine dispute…" between reasonable minds then the position is "substantially justified" pursuant to the EAJA. *Id*. at 565 (internal

quotation marks omitted). However, the government's defense of "basic and fundamental errors" cannot be considered as substantially justified. *Shafer v. Astrue*, 518 F.3d 1067, 1071-72 (9th Cir. 2008).

In this case, the Court found that Defendant's final decision merited remand because the ALJ erroneously rejected the opinion of Plaintiff's treating psychiatrist Dr. Mittleman.[1] In this regard, the Court found that: substantial evidence of record did not support the ALJ's invalidation of Plaintiff's December 2008 statement to Dr. Mittleman "that he had been drug and alcohol free for over a year" (Doc. 41, p. 13); the ALJ unreasonably concluded "that Plaintiff was not forthright with Dr. Mittleman in an effort to 'mislead' or 'dupe' Dr. Mittleman into prescribing a stimulant replacement for methamphetamine" in light of the fact that the ALJ expressly found that Plaintiff suffered from ADHD, a medical impairment for which a stimulant is an established treatment (*Id*. (the Court also stated that "Plaintiff could not have been more forthcoming with his treating providers about his substance abuse.")); the ALJ erred "by speculating that Dr. Mittleman did not know that Plaintiff worked part-time…" in light of record evidence indicating Dr. Mittleman was aware of this fact and knew, as well, that Plaintiff lived in an "RV" at his place of employment (*Id.* at p. 14); and in contravention of Ninth Circuit case law advising that a physician's statements of improvement must be read in context of the overall diagnostic picture that he draws and that it is error for an ALJ to rely on isolated instances of improvement over a period of time to rule against a claimant, "[t]he ALJ erroneously relied on a few select notations that Plaintiff was 'feeling better' or 'pretty good', was 'doing well' or was 'stable' 'on current meds', or was getting eight to nine hours of interrupted sleep a night as evidence that his functioning was inconsistent with allegations of disability" (*Id.* at pp. 14 (citing *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). Moreover, as to this last error, the Ninth Circuit has pointed out that reports of

---

[1] The impartial vocational expert testified that the mental limitations assessed by Dr. Mittleman, if adopted, would preclude past work or any work. (Doc. 41, pp. 22-23 (citing Tr. 102-03)).

- 4 -

1  improvement "must also be interpreted with an awareness that improved functioning
2  while being treated and while limiting environmental stressors does not always mean that
3  a claimant can function effectively in a workplace." *Garrison,* 759 F.3d at 1017-18 (9th
4  Cir. 2014) (citing *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001); *Scott v. Astrue,*
5  647 F.3d 734, 739-40 (7th Cir. 2011)) (footnote omitted). As discussed in the Court's
6  Amended Order (Doc. 41, pp. 14-15) any notation of improvement from time to time in
7  no way vitiated Dr. Mittleman's opinion.

8       The Court also held that the ALJ erred in finding that Plaintiff's testimony with
9  regard to the severity and functional consequences of his symptoms was "'not very
10 credible.'" (Doc. 41, p. 17 (citing Tr. 30)). In this regard, the Court found that: records
11 cited by the ALJ did not rationally support his decision (*Id.* at pp. 18-19); the ALJ failed
12 to cite to any specific instances in the record to support his conclusion that Plaintiff's
13 non-compliance with the prescribed medical regimen "does not support the alleged
14 intensity and duration of pain and subjective complaints[]" (*Id.* at p. 19); despite the
15 ALJ's finding to the contrary, Plaintiff's described activities did not contradict his
16 testimony regarding his limitations (*Id.* at p. 21); contrary to the ALJ's finding otherwise,
17 on the instant record, Plaintiff's part-time work did not correlate to the ability to work
18 full-time (*Id.*); no evidence of record supported a conclusion that Plaintiff's past work as
19 an auto body repairman, as actually performed, required a reading level above the fourth
20 grade (*Id.* at p. 21); and Plaintiff's statements about exercising did not support the ALJ's
21 negative credibility finding (*Id.* a pp. 21-22).

22      The Court credited Dr. Mittleman's opinion and Plaintiff's testimony as true. (*Id.*
23 at p. 23). However, the Court acknowledged that

> even crediting Dr. Mittleman's testimony as true regarding Plaintiff's alcoholism and substance abuse, it is not clear that Plaintiff would be disabled from his alleged [October 1, 2006] date of onset because there is no medical evidence in the record reflecting any medical treatment between the October 2006 alleged onset of disability and his first presentation to the Marana Health Clinic for an initial appointment on August 30, 2007. *See* Tr. 350-370. Additionally, Dr. Mittleman stated in July 2009 that alcohol or substance abuse did not contribute to any of Plaintiff's limitations, and

      that Plaintiff had been drug free for "around" two years.  *See* Tr. 387.  Dr. Mittleman, however, first saw Plaintiff in October 2007, at which time Plaintiff was still taking methamphetamines.  *See* Tr. 327, 332, 347, 387.

(*Id.* at p. 23)[2].  Therefore, the Court did not remand the matter for a calculation of benefits dating to Plaintiff's October 1, 2006 alleged onset date but, instead, remanded the for an award of benefits based upon a finding of disability commencing November 1, 2007, and directed further proceedings to determine whether Plaintiff's disability onset date occurred prior to November 1, 2007.  (*Id.* at p. 23).

      The same date the Court issued its Amended Order  (Doc. 41) the Court also granted in part Defendant's motion to alter or amend judgment (Doc. 40).  In discussing Defendant's motion, the Court stated that "Plaintiff gave varying statements about his use of alcohol and illegal drugs."  (Doc. 40,  p. 1).  The Court went on to reiterate its holding that "Dr. Mittleman's July 2009 opinions that alcohol and substance abuse did not contribute to Derr's functional limitations and that Derr had been drug free for about two years must be credited as true."  (*Id.* at p. 3 (citing Doc. 36 at pp. 17, 23)).  The Court then clarified that its intent was

> to find that Derr was disabled once treating psychiatrist Dr. Mittleman's opinions and Derr's statements were credited as true, but that, even crediting those statements and opinions as true, the Court could not determine itself precisely when Derr became disabled. The ALJ adjudicated the period from Derr's October 1, 2006 alleged onset date through November 10, 2010, *i.e.,* the date of the ALJ's decision. (Tr. at 24-33.) The record did not clearly establish that Derr had been disabled since October 1, 2006 and the Court does not know when Derr became disabled (in part because Dr. Mittleman began treating Derr in October 2007 and his opinion was equivocal regarding Plaintiff's substance abuse, stating that Plaintiff had been drug free for *about* two years). Thus, the Court remanded to an ALJ for an onset-date determination.

(Doc. 40, p. 3) (emphasis in original).

      In objecting to Plaintiff's fee request, Defendant cites the Court's statement in its

---

[2] Elsewhere in the decision the Court stated, in pertinent part, that "the Court credits Dr. Mittleman's opinion—that alcohol or substance abuse do not contribute to the Plaintiff's condition, and that he has not used drugs for about two years…." (Doc. 41, p. 17).

- 6 -

ruling on Defendant's motion to alter or amend judgment that "'Plaintiff gave varying statements about his use of alcohol and illegal drugs…" (Doc. 45, pp. 1, 3 (quoting Doc. 40, p.1)). Defendant argues that in light of Plaintiff's "varying statements", reasonable minds could disagree about whether the ALJ gave valid reasons for discounting Dr. Mittleman's opinion and Plaintiff's credibility. (*Id.* at p. 3). In context, the statement cited by Defendant appears as follows:

> In July 2009, treating source Dr. Mittleman stated that Plaintiff had been drug-free for "around" two years (*e.g*., since July 2007) and that alcohol and substance abuse did not contribute to any of his limitations (Tr. 387-91). Plaintiff gave varying statements about his use of alcohol and illegal drugs. In October 2007, he admitted recent meth use (Tr. 327). During a December 2008 examination in relation to his Social Security disability claims, Plaintiff asserted that he stopped using meth two years earlier (*e.g*., in December 2006) (Tr. 275). In December 2009, Plaintiff admitted past abuse of meth and cocaine, but asserted that he had not used either substance in over a year (Tr. 475).

(Doc. 40, p.1). The Court proceeded to clarify that the ALJ erred in evaluating Dr. Mittleman's opinions and Plaintiff's statements as they pertained to the period commencing as of November 1, 2007 and that, in light of those errors, the ALJ must conduct further proceedings to determine whether Plaintiff's disability commenced prior to that date.

Defendant's sole focus on the Court's acknowledgement that Plaintiff gave varying statements about his use of alcohol and illegal drugs overlooks the Court's extensive discussion explaining that the ALJ failed to set forth sufficient reasons for rejecting treating Dr. Mittleman's opinion and discounting Plaintiff's credibility. Moreover, although Defendant points out that "the Court found that it was 'not clear that Plaintiff would be disabled from his alleged [October 1, 2006] date of onset because there [wa]s no medical evidence in the record reflecting medical treatment between' October 2006 and August 2007,…" (Doc. 45, p. 4), Defendant ignores that the Court expressly found that Plaintiff was entitled to benefits based upon a finding of disability commencing November 1, 2007. The record is clear that based on the erroneous rejection of Dr. Mittleman's opinion and Plaintiff's credibility, the ALJ determined that Plaintiff

was not disabled for any period under consideration and, thus, the ALJ failed to consider the issue of a disability onset date. *See e.g.* SSR 83-20, 1983 WL 31249, *1 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.") The Court remanded the matter, in part, for further proceedings precisely to consider the issue of Plaintiff's disability onset date—a determination which the ALJ's errors prevented in the first instance.

At bottom, the issue that led to the remand decision for both award of benefits based upon a finding of disability commencing November 1, 2007 and for further proceedings to determine whether Plaintiff's disability onset date occurred prior to November 1, 2007, was the ALJ's improper rejection of Dr. Mittleman's opinion and Plaintiff's credibility. The ALJ's burden to state legally sufficient reasons to reject a treating doctor's opinion or to discount a claimant's credibility is clear under the law. *See e.g. Robbins v. Social Sec. Admin,* 466 F.3d 880, 884 (9th Cir. 2006) (stating test for discounting a claimant's credibility); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995) (setting out ALJ's burden to reject physician testimony). Yet, the ALJ failed to satisfy his burden. On this record, defense of such a fundamental errors lacks substantial justification. *See e.g. Shafer,* 518 F.3d at 1071 (where the ALJ improperly rejected a treating physician's opinion and improperly discredited the claimant's subjective complaints, government's position was not substantially justified).

Because the government's underlying position is not substantially justified, the Court need not address whether the government's litigation position was justified. *Tobler,* 749 F.3d at 832; *Meier*, 727 F.3d at 872. Moreover, consideration of the government's position in this litigation would inevitably result in the conclusion that the government's defense of the ALJ's errors is not substantially justified. *See e.g., Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir.1996) ("it is difficult to imagine any circumstance in which the government's decision to defend its actions in court would be substantially justified, but the underlying administrative decision would not."); *Meier,* 727 F.3d at 873 (same); *Green v. Colvin,* 2013 WL 1878924 at *2 (D. Ariz. May 3, 2013) ("While it may be

- 8 -

possible that some decision will be unsupported by substantial evidence or based on legal error and yet still have a reasonable basis in law and fact, this is not that case."). This is especially so given that Defendant's brief on the merits defended the ALJ's improper rejection of Dr. Mittleman's opinion and Plaintiff's credibility as to the entire alleged period of disability and essentially restated the same reasons cited in the ALJ's decision. *See Meier,* 727 F.3d at 873 (rejecting government's attempt to establish substantial justification for its position by relying on arguments raised on previous unsuccessful appeal); *Shreves v. Colvin,* 2013 WL 4010993 at *3 (D. Ariz. Aug. 6, 2013) (rejecting government's reliance on arguments made in opposing judicial review of the Commissioner's decision to show substantial justification for its position). Because Defendant was not was substantially justified in defending the administrative decision in this case, Plaintiff is entitled to attorneys' fees under the EAJA.

## B. REASONABLENESS OF FEES

Attorney fees and expenses awarded under the EAJA must be reasonable. *See* 28 U.S.C. § 2412(d)(2)(A). The district court has discretion to determine a reasonable fee award. *See* 28 U.S.C. § 2412(b); *Costa v. Commissioner of Soc. Sec.*, 690 F.3d 1132, 1135 (9th Cir. 2012). The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted). The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id.* at 1397-98 (citations omitted). In determining whether fees are reasonable under the EAJA, the Ninth Circuit applies the principles set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983), and other cases interpreting 42 U.S.C. § 1988. *Costa,* 690 F.3d at 1135 (citations omitted). The court may not reduce requested fees in social security disability appeals without providing relatively specific reasons. *Id.* at 1136-37.

In his EAJA petition, Plaintiff originally requested $9,590.86. However, in his

1  Reply, Plaintiff requested additional fees in the amount of $950.30 for five hours that Mr.
2  Schnaufer spent preparing the Reply to Defendant's opposition to Plaintiff's fee petition,
3  thus resulting in a fee request for a total of $10,541.16.  (Doc. 46, p. 11; Doc. 46-3).
4  Although Defendant does not object to the hourly rate requested by Plaintiff's counsel[3],
5  Defendant argues that the amount of fees requested by each attorney is excessive and
6  should be reduced from $9,590.86 (as Plaintiff initially requested in his opening petition)
7  to $7,422.51. Plaintiff counters that Defendant failed to specifically identify the alleged
8  improper billing entries. The Court addresses Defendant's objections to the extent that
9  the challenged entries, as described by Defendant, are readily apparent from the record.

10  The record reflects that Mr. Verrette represented Plaintiff from the inception of
11  this action in May 2012 through July 2013, when he withdrew as counsel due to health
12  reasons, resulting in Mr. McNamara's substitution as counsel for Plaintiff.  (*See* Docs. 1,
13  29, 31, 32, 33, 44-4).   Billing information from Mr. McNamara and Mr. Schnaufer
14  support the conclusion that Mr. McNamara acted as the attorney of record, reviewed the
15  briefs and orders, and interacted with the client (Doc. 44-2), while Mr. Schnaufer wrote
16  Plaintiff's briefs relating to the merits, Plaintiff's response to Defendant's request to alter
17  or amend judgment, and Plaintiff's fee request.  (Docs. 44-3, 46-3).

18  According to Defendant, Mr. Verrette's case-related activity concerned primarily
19  clerical tasks such as "using" the electronic docket for this case and preparing and serving
20  the summons.  (Doc. 45, p. 6).   Therefore, Defendant argues that Mr. Verrette's time
21  should be reduced from 9.8 hours to 4.0 hours.  (*Id.*).   "'[P]urely clerical or secretarial
22  tasks should not be billed at a paralegal [or lawyer's] rate regardless of who performs
23  them.'"  *Davis v. City of San Francisco,* 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in
24  part on other grounds,* 984 F.2d 345 (9th Cir. 1993) (quoting *Missouri v. Jenkins,* 491
25  U.S. 274, 288 n. 10 1989)). *See also  id.* ("time spent on clerical matters should not have
26  been included in the attorneys' fee award…."); *Hoefle v. Colvin,* 2014 WL 5217041

27
28      [3] Plaintiff's counsel "use the statutory maximum rates set by the Ninth Circuit." (Doc. 45, p. 6 n. 2; *see also* Doc. 44, p. 7 n.1)

(E.D. Cal. Oct. 14, 2014) ("time spent to e-file documents is routinely found to be clerical work that is non-compensable under the EAJA.").

Upon review of Mr. Verrette's time record (Doc. 44-4), the Court agrees that entries for service of the scheduling order (0.4 on June 7, 2012), logging in receipt of the certified mail return card (0.2 on June 11, 2012); preparing and filing the mailing certificate with the Court (0.3 on June 21, 2012–which was signed by Mr. Verrette's administrative assistant and not Mr. Verrette (*see* Doc. 7)), serving the complaint and summons through certified mail (0.7 on August 28, 2012), and preparing and filing the mailing certificate with the Court (0.5 on October 5, 2012), fall within the scope of clerical work and are not compensable as attorney's fees under the EAJA. Additionally, other instances of accessing the Court's Case Management/Electronic Case Files ("CM/ECF") system to file documents also appear in the record as entries reflecting block billing, *i.e,* the practice of "'lump[ing] together multiple tasks, making it impossible to evaluate their reasonableness[.]'" *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007) (quoting *Role Models Am. Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C. Cir. 2004)). Where a fee applicant engages in block billing, it is "reasonable for the district court to conclude that [the applicant] failed to carry [his] burden [of documenting the appropriate hours expended], because block billing makes it more difficult to determine how much time was spent on particular activities." *Welch,* 480 F.3d at 948 (citations omitted). Mr. Verrette's time records include block billing for "[p]repar[ing] and fil[ing]" documents with the Court. (Doc. 44-4). Because filing documents is clerical in nature, the hours for which fees are requested will be reduced by the amount of time it took to file the documents. *See Jenkins,* 491 U.S. at 288; *Davis,* 976 F.2d at 1543. Because of the block billing, the record does not reflect precisely how much time was spent on the task of filing the documents that Mr. Verrette prepared. Mr. Verrette's billing record indicates 0.2 billed for an unrelated instance where documents were filed with the Court. (Doc. 44-4 (June 11, 2012 entry for logging in receipt of certified mail return card)). Mr. Verrette's time will, therefore, be reduced by .20 for the

1  time spent filing documents in the following instances: filing the complaint on May 29,
2  2012; filing Plaintiff's application to proceed *in forma pauperis* on May 29, 2012, and
3  filing Plaintiff's Opposition to Defendant's Motion to Remand on December 20, 2012.
4  To the extent that Defendant objects to Mr. Verrette's use of CM/ECF to access and
5  review case documents including Court orders and filings by Defendant, the Court finds
6  the request for fees reasonable in this case.  For the foregoing reasons, Mr. Verrette's
7  time is reduced from 9.8 hours to 7.1 hours.

8        As to Mr. Schnaufer, who prepared the briefs on the merits as well as Plaintiff's
9  response to Defendant's motion to alter or amend judgment and Plaintiff's briefs on the
10  fee issue, Defendant argues his time should be reduced from 38.1 hours to 33.6 hours.
11  According to Defendant, Mr. Schnaufer requests fees for time calendaring and e-mailing
12  co-counsel, and almost five hours preparing the instant EAJA fees motion "although it is
13  largely boilerplate."  (Doc. 45, p. 6).   Mr. Schnaufer requests fees for 0.1 to calendar the
14  time for the EAJA application and to send an email to Mr. McNamara's law firm
15  regarding same.  (Doc. 44-3 (October 12, 2014)).  Some tasks "lie[] in a gray area…" in
16  that they "might appropriately be performed either by an attorney or a paralegal."
17  *Jenkins,* 491 U.S. at 288 n. 10.  Mr. Schnaufer points out that determining the due date
18  for a petition under the EAJA involves the interplay of the EAJA and rules of appellate
19  and civil procedure.  (Doc. 46, p.8).  The Court does not deem it unreasonable for Mr.
20  Schnaufer to take it upon himself to calculate the due date for filing a petition for EAJA
21  fees and coordinating same with Mr. McNamara via e-mail.

22        Mr. Schnaufer also points out that Defendant is incorrect that he claimed "almost
23  five" hours for work on the EAJA motion; instead, he sought fees for 3.5 hours.  (Doc.
24  46, p.7  (the 3.5 hours are reduced from the 4.5 hours that he actually expended); *see also*
25  Doc. 44-3, p.2 (Mr. Schnaufer seeks fees for 2.0 hours (which he reduced from 2.6
26  "actual time") drafting the substantial justification argument and 1.5 hours (which he
27  reduced from 1.9 hours "actual time") on all other issues)).   The brief contains
28  information necessary and pertinent to Plaintiff's case. The Court finds that 3.5 hours

1    expended in preparing Plaintiff's EAJA petition to be reasonable.  In conjunction with
2    preparing the actual fees petition, Mr. Schnaufer also spent time on matters related to the
3    petition, such as drafting, editing and updating his time record (0.4 on January 1, 2015
4    and .01 on January 7, 2015), drafting the EAJA stipulation (0.2), drafting the EAJA
5    proposed order (0.1), drafting the EAJA settlement letter (0.5), and contacting defense
6    counsel about same (0.1).  (Doc. 44-3, p. 2).  To the extent that Defendant's objection to
7    the time sought for the EAJA petition may include time spent on matters necessarily
8    attendant to submission of the fees petition, the Court finds such time reasonable.

9    Mr. Schnaufer's time record reflects that he did not bill for every e-mail exchange
10   with Mr. McNamara's law firm.  The three instances for which he seeks fees for e-mails
11   with Mr. McNamara's firm ("TMM") are as follows:  (1) 0.2 on August 8, 2014 for an
12   "e-mail from and to TMM re: 8/7/14 Order and EAJA fees"; (2) 0.3 on August 12, 2013[4]
13   for an "e-mail from TMM with Def.'s Rule 59(e) motion; review motion; e-mail to TMM
14   re: will draft response[]"; (3) 0.3 on October 9, 2014 for an "e-mail from TMM with
15   10/9/14 [Amended] Order; review Order; e-mail to TMM re: what next".  (Doc. 44-3, p.
16   1).  Mr. McNamara does not seek fees relating to any of the e-mails cited in Mr.
17   Schnaufer's statement, so there is no concern about awarding fees for duplicative work.
18   Although two of Mr. Schnaufer's entries are block billed, the Court finds that the time
19   attributable to e-mail discussion between Plaintiff's counsel about Plaintiff's case is
20   reasonable on the instant record.

21   Plaintiff, in his Reply brief, seeks additional fees for the five hours Mr. Schnaufer
22   spent reviewing and calendaring Defendant's opposition (0.2), drafting the Reply (4.6[5]),
23   drafting the supplemental time record (0.1), and drafting a proposed order granting
24   Plaintiff's fee petition reflecting the supplemental time (0.1).  (*See* Doc. 46-3)).
25   Defendant did not request leave to file a sur-reply with regard to the additional fees

---

[4] The year listed in Mr. Schnauffer's billing record for this entry appears to be mistaken given that Defendant's Rule 59(e) motion was filed in 2014 (*see* Doc. 38).

[5] Mr. Schnauffer indicates that it actually took him 5.7 hours to draft the Reply, but he only seeks fees for 4.6 hours.  (Doc. 46-3).

- 13 -

requested in Plaintiff's Reply. Defendant presented several issues in opposing Plaintiff's fee request, including whether Defendant's position was substantially justified, and whether the fees requested are reasonable. Although Plaintiff's Reply brief specifically addressed Defendant's substantial justification argument, Plaintiff did so by restating much of the facts and case law previously cited in Plaintiff's opening petition, thus, in that regard, the Reply did not appear to require additional research or review of the record evidence.  The Court will, therefore, reduce the fee request by 1.5 hours given that Plaintiff's fee award already includes the 2.0 hours Mr. Schnaufer spent drafting the substantial justification issue for the opening petition.  (Doc. 44-3, p..2).  The Court is satisfied that Plaintiff is entitled to the remaining time relating to the Reply brief, especially given that Plaintiff expanded his argument concerning the issue of reasonableness of fees.  For the foregoing reasons, Mr. Schnaufer's time is reduced from 43.1 hours  to 41.6 hours.

Defendant argues that Mr. McNamara's time should be reduced from 3.3 hours to 2.0 hours. (Doc. 45, p. 6). Defendant contends that Mr. McNamara reviewed but did not prepare any papers filed in this action and some of his work "duplicates time billed by Attorney Schnaufer" (*id.*), although Defendant does not cite a specific instance of duplication.  "In calculating the number of hours reasonably expended, a district court is to exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Tahara v. Matson Terminals, Inc.,* 511 F.3d 950, 955 (9th Cir. 2007) (quoting *Hensley*, 461 U.S. at 434). Review of Mr. McNamara's hours reflect that the majority of his time was spent communicating with Plaintiff and preparing for same in three instances by reviewing briefs and this Court's orders.  Defendant has not provided sufficient detail for the Court to ascertain why or how any of the tasks are duplicative of Mr. Schnaufer's.  For the foregoing reasons, Mr. McNamara's hours are not reduced.

Defendant points out, and Plaintiff does not dispute, that in light of *Astrue v. Ratliff,* 560 U.S. 586 (2010), fees awarded under the EAJA "belong to the Plaintiff and are subject to offset under the Treasury Offset Program (31 U.S.C. § 3716(c)(3)(B))."

(Doc. 45, p. 7). Accordingly, the fees awarded pursuant to this Order shall be made payable to Plaintiff and not to Plaintiff's attorney.

### III. CONCLUSION

For the foregoing reasons, Plaintiff is entitled to attorneys' fees as follows:

| Attorney | Hours | Hourly Rate (Year) |
|---|---|---|
| Mr. Verrette | 6.3 | $184.32 (2012) |
| Mr. Verrette | 0.8 | $187.02 (2013) |
| Mr. Schnaufer | 24.7 | $187.02 (2013) |
| Mr. Schnaufer | 13.4 | $189.78 (First half 2014) |
| Mr. Schnaufer | 3.5 | $190.06 (Final 2014 rate[6]) |
| Mr. McNamara | 2.3 | $187.02 (2013) |
| Mr. McNamara | 1.0 | $189.78 (First half 2014) |

Accordingly, IT IS ORDERED that Plaintiff's Motion for Attorney Fees Pursuant to the Equal Access to Justice Act (Doc. 43) is GRANTED to the extent that Plaintiff is awarded the amount of $9,758.46 in attorneys' fees. Payment shall be made payable to Plaintiff and delivered to Plaintiff's attorney of record at his office: Patrick R. McNamara, Tretschok & McNamara, P.C., P.O. Box 42887, Tucson, AZ 85733-2887.

Dated this 18th day of December, 2015.

_____
Bernardo P. Velasco
United States Magistrate Judge

---

[6] Plaintiff's counsel used the final 2014 hourly rate of $190.06 for work performed in 2015. (Doc. 46, p. 11, n.1).

- 15 -